BRAFF, HARRIS & SUKONECK
COUNSELLORS AT LAW
570 W. MT. PLEASANT AVE.
P.O. BOX 657
LIVINGSTON, NEW JERSEY 07039
Telephone: (973) 994-6677
Attorneys for Defendant, Super Luxury Tours, Inc.
Our File No. 26.18466



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

Brian C. Harris-2964

ASHLEY WILSON,

Plaintiff,

-against-

SUPER LUXURY TOURS, INC., WEI WANG
and NEW CENTURY TRAVEL, INC.,

Defendants.

# CV11-3137

**CIVIL ACTION**

**DOCKET NO.:**

**NOTICE OF REMOVAL
TO THE UNITED
STATES DISTRICT
COURT**

TO:   Clerk, United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Neil Moldovan, Esq.
Law Offices of Neil Moldovan, P.C.
One Old Country Road, Suite 270
Carle Place, NY 11514
Attorneys for Plaintiff, Ashley Wilson

**KORMAN, J.**

**REYES, M.J**

**PLEASE TAKE NOTICE**, that pursuant to 28 U.S.C. §§ 1331, 1441(a)-(c), and

1446, defendant Super Luxury Tours, Inc. ("defendant"), by its attorney, hereby removes

this action from the Supreme Court of the State of New York, County of Queens to the

United States District Court for the Eastern District of New York. In support of this Notice of Removal, defendant, Super Luxury Tours, Inc., states as follows:

1.    Plaintiff, Ashley Wilson, originally commenced this action by filing a Complaint against the defendants in the Supreme Court of the State of New York, County of Queens, where it is presently captioned as Ashley Wilson v. Super Luxury Tours, Inc., Wei Wang and New Century Travel, Inc., bearing Index No.: 7675-2011. No further proceedings before the state court have occurred. A copy of the Summons, Complaint and Affidavit of Service on Super Luxury Tours, Inc. is annexed hereto.

2.    Defendant, Super Luxury Tours, Inc., is a Pennsylvania corporation and has its principle place of business at 175 E. Market Street, Wilkes-Barre, Pennsylvania 18703.

3.    Defendant New Century Travel, Inc., upon information and belief, is a Pennsylvania Corporation and has its principle place of business at 55 N. 11th Street, Philadelphia, Pennsylvania, 19107.

4.    Despite having a pre-accident residence at 76-01 113th Street, Apt. 3E, Forest Hills, New York, 11375, defendant Wei Wang was killed during the bus accident giving rise to the underlying lawsuit, and as such, is not a proper party to this action. Specifically, a party cannot bring a legal action against a dead person without naming the

estate through the personal representative. 100 West 72nd Street Associates v. Murphy, 144 Misc.2d 1036, 545 N.Y.S.2d 901 (Civ. Ct, City of N.Y., 1989).

5.      As such, none of the properly joined and/or served defendants to this action are citizens of the State of New York, the venue where the instant action was originally brought.

6.      The investigation of the bus accident in question was supervised by the United States Department of Transportation under the auspices of the Federal Motor Carrier Safety Administration. Following the investigation, the United States Department of Transportation, pursuant to the Motor Carrier Safety Act of 1999, revoked defendant Super Luxury Tours, Inc.'s license and authority to continue operating as a commercial interstate motor carrier. A copy of the Revocation Order is annexed hereto.

7.      The Motor Carrier Safety Act of 1999, and its subsequent execution by, under and through the United States Department of Transportation and The Federal Motor Carrier Safety Administration, was intended by Congress to, and does in fact wholly and completely occupy and pre-empt state law as involving the actions of common carriers such as the bus involved in the accident in question. A copy of the "Act" is annexed hereto.

8.      In light of the federal pre-emption of Common Carriers in this area, the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.§ 1331. Any

negligence claims alleged would be ancillary in nature and subject to the supplemental jurisdiction of this Court.

9.      The plaintiff served the defendant, Super Luxury Tours, Inc. with its Complaint on May 31, 2011.

10.     This Notice of Removal is timely, having been filed within thirty (30) days of the date on which defendants were served with plaintiff's Complaint. See 28 U.S.C. §1446.

11.     A copy of this Notice is being served upon the Clerk of the Supreme Court of the State of New York, County of Queens.

12.     Written notice of this Notice of Removal of this action is being caused to be served on the plaintiff.

**WHEREFORE**, Defendant Super Luxury Tours, Inc., gives notice that this action is removed from the Supreme Court of the State of New York, County of Queens, to the United States District Court for the Eastern District of New York.

BRAFF, HARRIS & SUKONECK
Attorneys for Defendant, Super Luxury
Tours, Inc.

By:

Brian C. Harris, Esq.
BCH-2964

Dated: June 29, 2011

## CERTIFICATION OF MAILING

BRIAN C. HARRIS, ESQ., hereby certifies as follows:

I served the foregoing Notice of Filing of Removal to the United States District

Court, via American Clerical Lawyer's Service, upon the Clerk, United States District

Court Eastern District of New York, 225 Cadman Plaza East, Brooklyn, NY 11201, and

upon the Clerk of the Supreme Court of the State of New York, County of Queens, 88-11

Sutphin Boulevard, Jamaica, New York 11435, via New Jersey Lawyer's Service, and

upon the following parties via New Jersey Lawyers Service:

Neil Moldovan, Esq.
Law Offices of Neil Moldovan, P.C.
One Old Country Road, Suite 270
Carle Place, NY 11514
Attorneys for Plaintiff, Ashley Wilson

I hereby certified that the aforesaid statements made by me are true and correct. I

am aware that if any of the foregoing statements made by me are willfully false, I am

subject to punishment.

BRAFF, HARRIS & SUKONECK
Attorneys for Defendant, Super Luxury
Tours, Inc.

By: _____

Brian C. Harris, Esq.
Dated: June 29, 2011                                BCH-2964



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

Index #:7675-2011

-------------------------------------------------------------------X

ASHLEY WILSON,

                    Plaintiff,

Plaintiff designates QUEENS
County as place of Trial

-against-

The basis of venue is
Defendant Wei Wang's
residence.

**AMENDED SUMMONS**

SUPER LUXURY TOURS, INC., WEI WANG
and NEW CENTURY TRAVEL, INC.

Plaintiff's Address:
1521 North 15th Street, Apt. 6
Philadelphia, PA 19121

                 Defendants.

-------------------------------------------------------------------X

TO THE DEFENDANTS:

     YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer or, if the complaint is not served with summons, to serve a notice of appearance, on the Plaintiff's Attorney within 20 days after the service of this summons, exclusive of the date of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Carle Place, New York
       April 19, 2011

**Defendants' Addresses:**

**Super Luxury Tours Inc**
17 E Market Street
P. O. Box 1167
Wilkes Barre, PA 18703

LAW OFFICES OF NEIL MOLDOVAN, P.C.

**Wei Wang**
76-01 113th Street
Forest Hills, NY 11375

By: Neil Moldovan, Esq.
Attorneys for Plaintiff
One Old Country Road, Suite 270
Carle Place, NY 11514
(516) 294-3300

**New Century Travel, Inc.**
55 N. 11th Street
Philadelphia, PA 19107

Index No. 7675/2011
Date Filed: 5/3/11

## SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF QUEENS

Ashley Wilson,                                                                    Plaintiff,

-Against-

Super Luxury Tours, Inc., et al.,                                           Defendants.

State of New York County of Albany

Jeffrey Teitel, being duly sworn, deposes and says that deponent is over the age of eighteen years, is employed by the attorney service, TEITEL SERVICE BUREAU INC., and is not a party to this action.

That on the 31st day of May, 2011 at the office of the Secretary of State of New York in the City of Albany he served the annexed Amended Summons and Amended Verified Complaint on Super Luxury Tours, Inc. by delivering and leaving with __Chad Matick__, a clerk in the office of the Secretary of State, of the State of New York, personally at the Office of the Secretary of State of the State of New York, 1 true copy thereof and that at the time of making such service, Deponent paid said Secretary of State a fee of $40.00 Dollars. That said service was pursuant to section 307 of the Business Corporation Law.

Deponent further states that he knew the person so served as forsaid to be a clerk in the Office of the Secretary of State of New York, duly authorized to accept such service on behalf of said defendant.

Deponent further states that he describes the person actually served as follows:

| Sex | Skin Color | Hair Color | Age | Height | Weight |
|-----|-----------|-----------|-----|--------|--------|
| ✗ Male | ✗ White | __ Light | __ 20-30 | __ 5'-5'5'' | __ 100-150 |
| __ Female | __ Black | ✗ Medium | ✗ 31-40 | ✗ 5'6''-6' | ✗ 151-200 |
| | __ Other | __ Dark | __ 41-50 | __ 6'1''-6'5'' | __ 200-250 |
| | | | __ 51-60 | __ 6'6''+ | __ 250+ |

Sworn to me this 31st day of
May, 2011

__Hilary Teitel__
Hilary Teitel
Notary Public, State of New York
Qualified in Albany County
No. 01TE5049179
Commission Expires September 11, 2013

__Jeffrey Teitel__
Jeffrey Teitel

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-----------------------------------------------------------------------------x
ASHLEY WILSON,

                              Plaintiff,                          **AMENDED**
                                                                 **VERIFIED COMPLAINT**

              -against-

SUPER LUXURY TOURS, INC., WEI WANG,
and NEW CENTURY TRAVEL, INC.

                              Defendants.
-----------------------------------------------------------------------------x

        Plaintiff by her attorneys, the LAW OFFICES OF NEIL MOLDOVAN, P.C., complaining

of the defendants herein alleges the following upon information and belief:

## AS AND FOR A CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF ASHLEY WILSON

1.    That at all times hereinafter mentioned  plaintiff, ASHLEY WILSON, was and still is a

      resident of the County of Queens, State of New York.

2.    That at all times hereinafter mentioned the defendant, SUPER LUXURY TOURS, INC, was

      and still is a foreign corporation licensed to do business in the State of Pennsylvania.

3.    That at all times hereinafter mentioned the defendant, SUPER LUXURY TOURS, INC, was

      and still is a foreign corporation not licensed to do business in the State of New York, but

      was and still is doing business in the State of New York.

4.    That at all times hereinafter mentioned the defendant, NEW CENTURY TRAVEL, INC, was

      and still is a foreign corporation not licensed to do business in the State of New York, but

      was and still is doing business in the State of New York.

5.    That at all times hereinafter mentioned, upon information and belief, the defendant, SUPER

LUXURY TOURS, INC, owned the bus (hereinafter "BUS") en route from New York City to Philadelphia, Pennsylvania when said bus was involved in an accident in or around East Brunswick, New Jersey.

6. That upon information and belief, that all the times hereinafter mentioned, defendant, SUPER LUXURY TOURS, INC, owned the aforesaid bus.

7. That upon information and belief, that all the times hereinafter mentioned, defendant, SUPER LUXURY TOURS, INC, operated aforesaid bus.

8. That upon information and belief, that all the times hereinafter mentioned, SUPER LUXURY TOURS, INC, maintained aforesaid bus.

9. That upon information and belief, that all the times hereinafter mentioned, WEI WANG, maintained aforesaid bus.

10. That upon information and belief, that all the times hereinafter mentioned, defendant, SUPER LUXURY TOURS, INC, managed the aforesaid bus.

11. That upon information and belief, that all the times hereinafter mentioned, defendant, WEI WANG, managed the aforesaid bus.

12. That upon information and belief, that all the times hereinafter mentioned, defendant, SUPER LUXURY TOURS, INC, controlled the aforesaid bus.

13. That upon information and belief, that all the times hereinafter mentioned, defendant, WEI WANG, controlled the aforesaid bus.

14. That upon information and belief, that all the times hereinafter mentioned, defendant, SUPER LUXURY TOURS, INC, made repairs to the aforesaid bus.

15. That at all times hereinafter mentioned the defendant, NEW CENTURY TRAVEL, INC, was and still is a foreign corporation licensed to do business in the State of Pennsylvania.

16.    That at all times hereinafter mentioned, upon information and belief, the defendant, NEW CENTURY TRAVEL, INC, owned the bus (hereinafter "BUS") en route from New York City to Philadelphia, Pennsylvania when said bus was involved in an accident in or around East Brunswick, New Jersey.

17.    That upon information and belief, that all the times hereinafter mentioned, defendant, NEW CENTURY TRAVEL, INC, owned the aforesaid bus.

18.    That upon information and belief, that all the times hereinafter mentioned, defendant, NEW CENTURY TRAVEL, INC, operated aforesaid bus.

19.    That upon information and belief, that all the times hereinafter mentioned, NEW CENTURY TRAVEL, INC, maintained aforesaid bus.

20.    That upon information and belief, that all the times hereinafter mentioned, defendant, NEW CENTURY TRAVEL, INC, managed the aforesaid bus.

21.    That upon information and belief, that all the times hereinafter mentioned, defendant, NEW CENTURY TRAVEL, INC, controlled the aforesaid bus.

22.    That upon information and belief, that all the times hereinafter mentioned, defendant, NEW CENTURY TRAVEL, INC, made repairs to the aforesaid bus.

23.    That upon information and belief, on the 14th day of March, 2011, defendant, WEI WANG, operated said bus with the permissive use of its owner, defendants, SUPER LUXURY TOURS, INC. and NEW CENTURY TRAVEL, INC.

24.    That on the 14th day of March, 2011, defendant, WEI WANG, with permissive use, carelessly and negligently operated the aforementioned bus, causing Plaintiff to sustain serious and permanent injuries, without the Plaintiff contributing thereto in any way whatsoever.

25. That at all times herein mentioned, Plaintiff, ASHLEY WILSON, was lawfully a passenger in the bus operated by Defendant, WEI WANG, with permissive use of its owner, Defendants, SUPER LUXURY TOURS, INC. and NEW CENTURY TRAVEL, INC.

26. That at all times herein mentioned, Plaintiff, ASHLEY WILSON, was a business invitee of the defendants, SUPER LUXURY TOURS, INC. and NEW CENTURY TRAVEL, INC.

27. That at all times herein mentioned, defendant, WEI WANG, was and still is a resident of the County of Queens, State of New York.

28. That at all times hereinafter mentioned, New Jersey Turnpike at or near its Exit 9 in the County of Middlesex, State of New Jersey was and still is a public road/highway and on the 14th day of March, 2011, the above described bus slammed into a guard rail and a concrete abutment at said location.

29. That on the 14th day of March, 2011, defendant, WEI WANG, with permissive use carelessly and negligently drove the aforementioned bus, so as to cause plaintiff, ASHLEY WILSON, to sustain serious and permanent injuries without the plaintiff contributing thereto, at the said location.

30. That the aforesaid occurrence was caused solely by the negligence of the defendants, without plaintiff contributing thereto, in that the defendants' bus was owned, operated, maintained and controlled in a careless, reckless and negligent manner, all of which resulted in the injuries sustained by the plaintiff.

31. That Plaintiff, ASHLEY WILSON, is a covered person as defined in Article 51 of the Insurance Law of the State of New York.

32. That as a result of the foregoing, Plaintiff, ASHLEY WILSON, has suffered serious injury as defined by Subdivision (defendant) of Section 5102 of the Insurance Law of the State of

New York.

33.     That by reason of the foregoing, Plaintiff, ASHLEY WILSON,  is entitled to recover for

"non-economic loss", as defined in Subdivision (c) of Section 5102 of the Insurance Law of

the State of  New York, and for such economic losses as are not included within the

definition of "Basic Economic Loss", as set forth in Section 5102 Subdivisions (a), (b), and

(c) of the Insurance Law of the State of New York.

34.     That as a result of the foregoing, Plaintiff, ASHLEY WILSON, has been damaged in a sum

of money that exceed the monetary jurisdiction of all lower courts.

        **WHEREFORE**, plaintiff demands judgment in her favor against the defendants in

sums which exceeds the jurisdictional limits of the lower courts, together with the costs and

disbursements of these action and such other and further relief as this court may deem just and

proper.

Dated: Carle Place, New York
       April 19, 2011

                                    Yours, etc.
                                    LAW OFFICES OF NEIL MOLDOVAN, P.C.


                                    By: Neil Moldovan, Esq.
                                    Attorneys For Plaintiff
                                    One Old Country Road, Suite 270
                                    Carle Place, New York 11514
                                    (516) 294-3300

STATE OF NEW YORK ⟩
                  : ss.:
COUNTY OF NASSAU ⟩

       I, the undersigned, an attorney duly admitted to practice law in the State of New York, under penalties of perjury, do affirm:

       That I am the principle of the Law Offices of Neil Moldovan, P.C., the attorneys of record, for Plaintiff, ASHLEY WILSON, in the within matter, and make this affirmation in accordance with CPLR 3020. I have read the within Amended Summons and Verified Complaint and know the contents thereof to be true to your affirmant's own knowledge, with the exception of those matters therein stated to be alleged upon information and belief, and as to those matters your affirmant believes them to be true. The grounds upon which your affirmant bases his belief regarding those matters not stated upon your affirmant's knowledge are: Review of file and conversations with Plaintiff.

       This verification is made by your affirmant and not by Plaintiff for the following reason: Plaintiff resides outside the county where deponent maintains his office.

Dated: Carle Place, New York
        April 19, 2011

                                        NEIL MOLDOVAN, ESQ.

SUPREME COURT OF THE STATE OF NEW YORK       7675-2011.
COUNTY OF QUEENS

Index No.

---

ASHLEY WILSON,

Plaintiff,

-against-

SUPER LUXURY TOURS, INC., WEI WANG,
and NEW CENTURY TRAVEL, INC.

Defendants.

---

## AMENDED SUMMONS AND VERIFIED COMPLAINT

---

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Law Offices of*
Neil Moldovan, P.C.

Attorney(s) for       Plaintiff
By: _____
Print Signer's Name: Neil Moldovan
Office and Post Office Address, Telephone
ONE OLD COUNTRY ROAD, SUITE 270
CARLE PLACE, NEW YORK 11514
Tel. 516-294-3300 • Fax 516-294-4019

Dated:     , 200

---

To

Attorney(s) for

Service of a copy of the within
is hereby admitted.

Dated: ........................ 20..........

...............................................

---

PLEASE TAKE NOTICE:

☐ NOTICE OF ENTRY

that the within is a *(certified) true copy of a*
duly entered in the office of the clerk of the within named court on      20

☐ NOTICE OF SETTLEMENT

that an order       of which the within is a true copy
will be presented for settlement to the HON.       one of the judges of the
within named Court, at
on      20   at      M.

Dated,

Yours, etc.

*Law Offices of*
Neil Moldovan, P.C.

UNITED STATES DEPARTMENT OF TRANSPORTATION

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION

SUPER LUXURY TOURS, INC.     )  Order No.:  PA-2011-0001-IMH

USDOT  1669914          )

                       )

                       )  Service

                       )  Date:___*March 31, 2011*___

                       )

                       )  Time:___*2:25 pm*___

                       )

                       )

## OPERATIONS OUT-OF-SERVICE ORDER

This notice is an Operations Out-of-Service Order ("ORDER") by the United States pursuant to 49 U.S.C. § 521(b)(5)(A), 49 U.S.C. § 13905(f), 49 U.S.C. § 31144(c)(1) and (2), 49 U.S.C. § 31144(c)(5), and 49 C.F.R. § 386.72(b)(1), and pursuant to delegation of authority to the Field Administrator, Eastern Service Center, Federal Motor Carrier Safety Administration (FMCSA), United States Department of Transportation (USDOT), Glen Burnie, Maryland. This ORDER applies to SUPER LUXURY TOURS, INC., USDOT number 1669914, (referred to herein as "you", "your", and/or "SUPER LUXURY").

The United States finds your operations constitute an **"imminent hazard."** This finding means that based upon your present state of unacceptable safety compliance and your failure to adequately establish and maintain safety management systems and ensure your drivers are qualified and vehicles are properly maintained, your operations pose an **imminent hazard** to public safety.

<u>**EFFECTIVE IMMEDIATELY, YOU MUST CEASE ALL MOTOR VEHICLE**</u>
<u>**OPERATIONS, INCLUDING ALL INTERSTATE AND INTRASTATE**</u>
<u>**TRANSPORATION OF PASSENGERS BY DRIVERS FROM ALL DISPATCHING**</u>
<u>**LOCATIONS OR TERMINALS.**</u>

Vehicles and their drivers now in interstate or intrastate commerce may proceed to their next immediate destination, which is defined as the next scheduled stop for vehicles already in motion where the passengers can be safely accommodated. (*See* 49 C.F.R. § 386.72(b)(4) and (5)).

<u>**NO ADDITIONAL PASSENGERS MAY BE LOADED OR TRANSPORTED,**</u>
<u>**NOR MAY THE BUSES BE OPERATED IN INTERSTATE OR INTRASTATE**</u>
<u>**COMMERCE DURING THE PERIOD OF TIME THIS ORDER IS IN EFFECT. A BUS**</u>
<u>**MAY BE MOVED TO A LOCATION TO BE REPAIRED ONLY UPON APPROVAL**</u>
<u>**FROM THE FIELD ADMINISTRATOR.**</u>

I.    **JURISDICTION**

SUPER LUXURY is a motor carrier engaged in interstate commerce and is therefore subject to the Federal Motor Carrier Safety Regulations ("FMCSRs"), 49 C.F.R. Parts 350-399, as well as the Orders of the USDOT and FMCSA. (*See* 49 U.S.C. §§ 506, 507, 13501 and 31133.)

SUPER LUXURY is required to comply, and to ensure its drivers comply, with the FMCSRs (49 C.F.R. § 390.11). This Order shall have the force and effect of any other Order issued by the FMCSA and shall be binding upon SUPER LUXURY, as well as any and all of its officers, directors, successors and assigns.

2

## II.     BASIS FOR ORDER

The basis for determining that SUPER LUXURY'S motor carrier operations pose an imminent hazard to the public is that SUPER LUXURY fails to ensure it is complying with the Federal controlled substances and alcohol use and testing requirements, drivers' qualification requirements, and drivers' hours of service requirements, thereby posing a continuing imminent hazard to the public. Further, SUPER LUXURY currently operates vehicles in a mechanically unsafe operating condition which, if operated, would pose an imminent hazard to the public. In addition, SUPER LUXURY fails to ensure its vehicles are properly and regularly inspected, repaired and maintained, thereby posing a continuing imminent hazard to the public. Individually and cumulatively, these violations and conditions of operation substantially increase the likelihood of serious injury or death to SUPER LUXURY drivers and to the motoring public.

Moreover, in a decision dated March 30, 2011, FMCSA notified SUPER LUXURY that FMCSA had suspended SUPER LUXURY'S operating authority registration based on the cancelation of its statutorily required evidence of financial responsibility. In a separate Order also dated March 30, 2011, FMCSA ordered to be placed out of service every motor vehicle operated by SUPER LUXURY that required operating authority.

## III.    BACKGROUND

On March 14, 2011, a motor coach being operated by SUPER LUXURY was involved in a crash on the New Jersey Turnpike in which the driver and a passenger were killed. FMCSA's investigation of the crash and investigations by other State and Federal agencies are ongoing.

As part of its investigation into the crash, FMCSA conducted a Compliance Review of SUPER LUXURY'S operations. During the Compliance Review, FMCSA investigators discovered numerous critical and other violations of the FMCSRs. Specifically, 7 of the 11 drivers checked by FMCSA investigators for compliance with the pre-employment controlled

3

substances testing requirement had not been tested before being allowed to operate a passenger-carrying commercial motor vehicle. SUPER LUXURY conducted no random alcohol tests during 2010, and less than 30% of the required number of controlled substances tests. SUPER LUXURY failed to inquire into 9 of 16 drivers' backgrounds, and 12 of 16 drivers' driving records. It allowed three drivers without current medical certifications to operate commercial motor vehicles. Of the 165 records of duty status reviewed, 123 were prepared improperly, and over 25% of the hours of service records reviewed showed that SUPER LUXURY did not require its drivers to submit records of duty status within the required time. SUPER LUXURY failed to inspect push-out windows and emergency doors. Moreover, on March 30, 2011, FMCSA and State investigators inspected four vehicles owned or operated by SUPER LUXURY. Of the four vehicles inspected, two were placed out of service for mechanical defects, including inoperable or defective brakes, and inoperable emergency exit windows.

The Compliance Review uncovered violations of the FMCSRs so widespread as to demonstrate a continuing and flagrant general disregard for compliance with the FMCSRs and a management philosophy indifferent to motor carrier safety. The result of the Compliance Review was a proposed safety fitness rating of "Unsatisfactory," finding a breakdown of SUPER LUXURY'S management controls and oversight of its drivers and equipment to ensure safe operation of its commercial motor vehicles.

IV.     REMEDIAL ACTION

To eliminate this imminent hazard, and before SUPER LUXURY will be permitted to resume those operations placed out of service by this Order, SUPER LUXURY must undertake positive steps which will ensure and demonstrate compliance with the FMCSRs.

4

## YOU MUST COMPLY WITH THE PROVISIONS OF THIS ORDER

1.     SUPER LUXURY must ensure and demonstrate that its vehicles are in a safe operating condition, they are in full compliance with 49 C.F.R. Part 393 (Parts and Accessories Necessary for Safe Operations) and Part 396 (Vehicle Maintenance), and there is an adequate maintenance program in place to ensure compliance with the FMCSRs.

2.     SUPER LUXURY must require all drivers to prepare Driver Vehicle Inspection Reports at the end of each day, implement a procedure so that its drivers can report safety defects and/or deficiencies and establish procedures to ensure that reported safety defects and/or deficiencies are repaired immediately.

3.     SUPER LUXURY must maintain a DOT controlled substance and alcohol testing program in compliance with 49 C.F.R. Parts 40 and 382.

4.     SUPER LUXURY must ensure its personnel are adequately trained in the requirements of the FMCSRs and they are able to conduct motor carrier operations consistent with those regulations.

5.     SUPER LUXURY must ensure it maintains driver qualification files, as required by 49 C.F.R. Part 391 (Qualification of Drivers and Longer Combination Vehicle Driver Instruction).

6.     SUPER LUXURY must ensure all drivers are medically examined and certified.

7.     SUPER LUXURY must ensure drivers accurately and fully complete their daily records of duty status and submit them to the carrier within 13 days of their completion. SUPER LUXURY must maintain drivers' records of duty status and all supporting documents for a minimum period of 6 months. Further, SUPER LUXURY must ensure that all records of duty status are accurate by using all means available to it and by comparing each with all supporting documentation.

8.     SUPER LUXURY must comply with all Orders issued by the FMCSA.

## V.     RECISSION OF ORDER

Before resuming motor carrier operations SUPER LUXURY must comply with the provisions of this Order, eliminate the problems constituting the imminent hazard that its operations pose and adequately demonstrate to the Field Administrator, Eastern Service Center, Federal Motor Carrier Safety Administration, United States Department of Transportation, the actions taken to eliminate the safety problems. SUPER LUXURY cannot avoid this Operations Out-of-Service Order by continuing operations under the name of another person or company.

5

Any lease of equipment and/or direct assignment of contracts or other arrangements require the written approval of the Eastern Service Center Field Administrator. Any such action taken in anticipation of this Operations Out-of-Service Order must cease immediately. SUPER LUXURY must have the Order rescinded by the Eastern Service Center Field Administrator before it may continue interstate or intrastate operations. Prior to rescission of the Order, SUPER LUXURY will be required to:

      **1.**     **IDENTIFY THE CAUSE FOR ITS NONCOMPLIANCE.**

      **2.**     **DEVELOP A DETAILED PLAN OF ACTION THAT ADDRESSES EACH AREA OF NON-COMPLIANCE, THE STEPS IT INTENDS TO TAKE TO OVERCOME ITS NON-COMPLIANCE AND A TIME TABLE FOR THESE STEPS (THE SAFETY MANAGEMENT PLAN).**

      **3.**     **DEVELOP AND CERTIFY THE COMMITMENT OF SUPER LUXURY TO COMPLY WITH THE FMCSRS.**

      **4.**     **EXECUTE THE SAFETY MANAGEMENT PLAN AND PROVIDE CERTIFICATION BY ALL OWNERS AND COMPANY OFFICIALS.**

Any request to rescind this ORDER and documentation demonstrating satisfaction of the Remedial Action requirements must be directed to the Field Administrator, Eastern Service Center with a copy of the request and documentation to the Division Administrator, Pennsylvania Division, at the following addresses:

    Field Administrator, Eastern Service Center
    Federal Motor Carrier Safety Administration
    801 Cromwell Park Drive
    Suite N
    Glen Burnie, MD 21061

6

Division Administrator, Pennsylvania Division
Federal Motor Carrier Safety Administration
215 Limekiln Road Suite 200
New Cumberland, PA 17070

## VI.   FAILURE TO COMPLY

Failure to comply with the provisions of this Operations Out-of-Service Order may

subject SUPER LUXURY to an action by the United States Attorney in the United States

District Court for equitable relief and punitive damages. SUPER LUXURY may be assessed

civil penalties of up to $16,000 per day for each day it continues the proscribed interstate or

intrastate operations after the effective date and time of this Order. (49 C.F.R. Part 386, App. A.

§ IVg)). If violations are determined to be willful, criminal penalties may be imposed, including

a fine of up to $25,000 and a prison term of one year.  (49 U.S.C. § 521(b)(6)(A)).

## VII.   PENALTIES FOR VIOLATIONS

Any motor carrier that violates Federal requirements, including the FMCSRs, and/or

permits its employee(s) to violate Federal requirements is subject to civil and/or criminal penalty

provisions.  Penalty provisions for violations of Federal statutes and regulations are separate and

distinct from this ORDER.  Penalties may be assessed for the violations of Federal requirements,

including the FMCSRs, previously discovered, discovered after the service of this ORDER,

and/or discovered during subsequent investigations.

## VIII.   RIGHT TO REVIEW

You have a right to administrative review pursuant to 49 C.F.R. § 386.72(b)(2) in

accordance with 5 U.S.C. § 554.  If requested, administrative review shall occur within 10

working days of the issuance of this ORDER.  (*See* 49 U.S.C. § 521(b)(5) and 49 C.F.R. §

386.72(b)(4)).  A request for review must be addressed to the Assistant Administrator, United

7

States Department of Transportation, Federal Motor Carrier Safety Administration, with a copy

sent to the Field Administrator, Eastern Service Center at the following addresses:

> Assistant Administrator
> Federal Motor Carrier Safety Administration
> 1200 New Jersey Avenue SE
> Washington, DC 20590

> Field Administrator, Eastern Service Center
> Federal Motor Carrier Safety Administration
> 801 Cromwell Park Drive
> Suite N
> Glen Burnie, MD 21061

The request must state the material facts at issue which you believe dispute or contradict

the finding that SUPER LUXURY'S operation constitutes an "imminent hazard" to the public.


**A REQUEST FOR REVIEW DOES NOT IN ANY WAY DELAY YOUR DUTY TO**

**COMPLY WITH THIS ORDER IMMEDIATELY. SUPER LUXURY'S RESPONSE TO**

**THIS OPERATIONS OUT-OF-SERVICE ORDER WILL NOT ALTER THE**

**PROPOSED "UNSATISFACTORY" SAFETY FITNESS RATING THAT RESULTED**

**FROM THE MARCH 2011 COMPLIANCE REVIEW.**


Date: _3/31/2011_                      _____
                                       Robert W. Miller, Field Administrator
                                       United States Department of Transportation
                                       Federal Motor Carrier Safety Administration

8

PUBLIC LAW 106-159—DEC. 9, 1999

# MOTOR CARRIER SAFETY IMPROVEMENT ACT
## OF 1999

113 STAT. 1748      PUBLIC LAW 106–159—DEC. 9, 1999

## Public Law 106–159
## 106th Congress

## An Act

Dec. 9, 1999

[H.R. 3419]

To amend title 49, United States Code, to establish the Federal Motor Carrier Safety Administration, and for other purposes.

Motor Carrier
Safety
Impovement Act
of 1999.
49 USC 101 note.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

### SECTION 1. SHORT TITLE; TABLE OF CONTENTS.

(a) SHORT TITLE.—This Act may be cited as the "Motor Carrier Safety Improvement Act of 1999".

(b) TABLE OF CONTENTS.—

Sec. 1. Short title; table of contents.
Sec. 2. Secretary defined.
Sec. 3. Findings.
Sec. 4. Purposes.

#### TITLE I—FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION

Sec. 101. Establishment of Federal Motor Carrier Safety Administration.
Sec. 102. Revenue aligned budget authority.
Sec. 103. Additional funding for motor carrier safety grant program.
Sec. 104. Motor carrier safety strategy.
Sec. 105. Commercial motor vehicle safety advisory committee.
Sec. 106. Saving provisions.
Sec. 107. Effective date.

#### TITLE II—COMMERCIAL MOTOR VEHICLE AND DRIVER SAFETY

Sec. 201. Disqualifications.
Sec. 202. Requirements for State participation.
Sec. 203. State noncompliance.
Sec. 204. Checks before issuance of driver's license.
Sec. 205. Registration enforcement.
Sec. 206. Delinquent payment of penalties.
Sec. 207. State cooperation in registration enforcement.
Sec. 208. Imminent hazard.
Sec. 209. Household goods amendments.
Sec. 210. New motor carrier entrant requirements.
Sec. 211. Certification of safety auditors.
Sec. 212. Commercial van rulemaking.
Sec. 213. 24-hour staffing of telephone hotline.
Sec. 214. CDL school bus endorsement.
Sec. 215. Medical certificate.
Sec. 216. Implementation of Inspector General recommendations.
Sec. 217. Periodic refiling of motor carrier identification reports.
Sec. 218. Border staffing standards.
Sec. 219. Foreign motor carrier penalties and disqualifications.
Sec. 220. Traffic law initiative.
Sec. 221. State-to-State notification of violations data.
Sec. 222. Minimum and maximum assessments.
Sec. 223. Motor carrier safety progress report.
Sec. 224. Study of commercial motor vehicle crash causation.
Sec. 225. Data collection and analysis.
Sec. 226. Drug test results study.
Sec. 227. Approval of agreements.
Sec. 228. DOT authority.

### SEC. 2. SECRETARY DEFINED.

49 USC 101 note.

In this Act, the term "Secretary" means the Secretary of Transportation.

### SEC. 3. FINDINGS.

49 USC 113 note.

Congress makes the following findings:

(1) The current rate, number, and severity of crashes involving motor carriers in the United States are unacceptable.

(2) The number of Federal and State commercial motor vehicle and operator inspections is insufficient and civil penalties for violators must be utilized to deter future violations.

(3) The Department of Transportation is failing to meet statutorily mandated deadlines for completing rulemaking proceedings on motor carrier safety and, in some significant safety rulemaking proceedings, including driver hours-of-service regulations, extensive periods have elapsed without progress toward resolution or implementation.

(4) Too few motor carriers undergo compliance reviews and the Department's data bases and information systems require substantial improvement to enhance the Department's ability to target inspection and enforcement resources toward the most serious safety problems and to improve States' ability to keep dangerous drivers off the roads.

(5) Additional safety inspectors and inspection facilities are needed in international border areas to ensure that commercial motor vehicles, drivers, and carriers comply with United States safety standards.

(6) The Department should rigorously avoid conflicts of interest in federally funded research.

(7) Meaningful measures to improve safety must be implemented expeditiously to prevent increases in motor carrier crashes, injuries, and fatalities.

(8) Proper use of Federal resources is essential to the Department's ability to improve its research, rulemaking, oversight, and enforcement activities related to commercial motor vehicles, operators, and carriers.

### SEC. 4. PURPOSES.

49 USC 113 note.

The purposes of this Act are—

(1) to improve the administration of the Federal motor carrier safety program and to establish a Federal Motor Carrier Safety Administration in the Department of Transportation; and

(2) to reduce the number and severity of large-truck involved crashes through more commercial motor vehicle and operator inspections and motor carrier compliance reviews, stronger enforcement measures against violators, expedited completion of rulemaking proceedings, scientifically sound research, and effective commercial driver's license testing, recordkeeping and sanctions.

# TITLE I—FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION

### SEC. 101. ESTABLISHMENT OF FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION.

(a) IN GENERAL.—Chapter 1 of title 49, United States Code, is amended by adding at the end the following:

## "§ 113. Federal Motor Carrier Safety Administration

"(a) IN GENERAL.—The Federal Motor Carrier Safety Administration shall be an administration of the Department of Transportation.

"(b) SAFETY AS HIGHEST PRIORITY.—In carrying out its duties, the Administration shall consider the assignment and maintenance of safety as the highest priority, recognizing the clear intent, encouragement, and dedication of Congress to the furtherance of the highest degree of safety in motor carrier transportation.

"(c) ADMINISTRATOR.—The head of the Administration shall be the Administrator who shall be appointed by the President, by and with the advice and consent of the Senate, and shall be an individual with professional experience in motor carrier safety. The Administrator shall report directly to the Secretary of Transportation.

"(d) DEPUTY ADMINISTRATOR.—The Administration shall have a Deputy Administrator appointed by the Secretary, with the approval of the President. The Deputy Administrator shall carry out duties and powers prescribed by the Administrator.

"(e) CHIEF SAFETY OFFICER.—The Administration shall have an Assistant Federal Motor Carrier Safety Administrator appointed in the competitive service by the Secretary, with the approval of the President. The Assistant Administrator shall be the Chief Safety Officer of the Administration. The Assistant Administrator shall carry out the duties and powers prescribed by the Administrator.

"(f) POWERS AND DUTIES.—The Administrator shall carry out—

"(1) duties and powers related to motor carriers or motor carrier safety vested in the Secretary by chapters 5, 51, 55, 57, 59, 133 through 149, 311, 313, 315, and 317 and by section 18 of the Noise Control Act of 1972 (42 U.S.C. 4917; 86 Stat. 1249–1250); except as otherwise delegated by the Secretary to any agency of the Department of Transportation other than the Federal Highway Administration, as of October 8, 1999; and

"(2) additional duties and powers prescribed by the Secretary.

"(g) LIMITATION ON TRANSFER OF POWERS AND DUTIES.—A duty or power specified in subsection (f)(1) may only be transferred to another part of the Department when specifically provided by law.

"(h) EFFECT OF CERTAIN DECISIONS.—A decision of the Administrator involving a duty or power specified in subsection (f)(1) and involving notice and hearing required by law is administratively final.

"(i) CONSULTATION.—The Administrator shall consult with the Federal Highway Administrator and with the National Highway

Traffic Safety Administrator on matters related to highway and motor carrier safety.".

(b) ADMINISTRATIVE EXPENSES.—Section 104(a)(1) of title 23, United States Code, is amended—

(1) in paragraph (1) by redesignating subparagraphs (A) and (B) as clauses (i) and (ii), respectively, and by moving the text of such clauses 2 ems to the right;

(2) in paragraph (1) by striking "exceed 1¼ percent of all sums so made available, as the Secretary determines necessary—" and inserting "exceed—

"(A) 1¼ percent of all sums so made available, as the Secretary determines necessary—";

(3) by striking the period at the end of paragraph (1)(A)(ii) (as redesignated by paragraphs (1) and (2) of this subsection) and inserting "; and" and the following:

"(B) one-third of 1 percent of all sums so made available, as the Secretary determines necessary, to administer the provisions of law to be financed from appropriations for motor carrier safety programs and motor carrier safety research."; and

(4) by adding at the end the following:

"(4) LIMITATION ON TRANSFERABILITY.—Unless expressly authorized by law, the Secretary may not transfer any sums deducted under paragraph (1) to a Federal agency or entity other than the Federal Highway Administration and the Federal Motor Carrier Safety Administration.".

(c) CONFORMING AMENDMENTS.—

(1) CHAPTER ANALYSIS.—The analysis for chapter 1 of title 49, United States Code, is amended by adding at the end the following:

"113. Federal Motor Carrier Safety Administration.".

(2) FEDERAL HIGHWAY ADMINISTRATION.—Section 104 of title 49, United States Code, is amended—

(A) in subsection (c)—

(i) by striking the semicolon at the end of paragraph (1) and inserting "; and";

(ii) by striking paragraph (2); and

(iii) by redesignating paragraph (3) as paragraph (2);

(B) by striking subsection (d); and

(C) by redesignating subsection (e) as subsection (d).

(d) POSITIONS IN EXECUTIVE SERVICE.—

(1) ADMINISTRATOR.—Section 5314 of title 5, United States Code, is amended by inserting after

"Administrator of the National Highway Traffic Safety Administration."

the following:

"Administrator of the Federal Motor Carrier Safety Administration.".

(2) DEPUTY AND ASSISTANT ADMINISTRATORS.—Section 5316 of title 5, United States Code, is amended by inserting after

"Deputy Administrator of the National Highway Traffic Safety Administration."

the following:

"Deputy Administrator of the Federal Motor Carrier Safety Administration.

"Assistant Federal Motor Carrier Safety Administrator.".

113 STAT. 1752          PUBLIC LAW 106–159–DEC. 9, 1999

(e) PERSONNEL LEVELS.—The number of personnel positions at the Office of Motor Carrier Safety (and, beginning on January 1, 2000, the Federal Motor Carrier Safety Administration) at its headquarters location in fiscal year 2000 shall not be increased above the level transferred from the Federal Highway Administration to the Office of Motor Carrier Safety. The Secretary shall provide detailed justifications to the Committee on Commerce, Science, and Transportation of the Senate and the Committee on Transportation and Infrastructure of the House of Representatives for the personnel requested for fiscal years 2001, 2002, and 2003 for the Federal Motor Carrier Safety Administration when the President submits his budget, including a justification for increasing personnel at headquarters above the levels so transferred.

49 USC 31136 note.

(f) AUTHORITY TO PROMULGATE SAFETY STANDARDS FOR RETRO-FITTING.—The authority under title 49, United States Code, to promulgate safety standards for commercial motor vehicles and equipment subsequent to initial manufacture is vested in the Secretary and may be delegated.

49 USC 330 note.

(g) CONFLICTS OF INTEREST.—

(1) COMPLIANCE WITH REGULATION.—In awarding any contract for research, the Secretary shall comply with section 1252.209–70 of title 48, Code of Federal Regulations, as in effect on the date of the enactment of this section. The Secretary shall require that the text of such section be included in any request for proposal and contract for research made by the Secretary.

(2) STUDY.—

(A) IN GENERAL.—The Secretary shall conduct a study to determine whether or not compliance with the section referred to in paragraph (1) is sufficient to avoid conflicts of interest in contracts for research awarded by the Secretary and to evaluate whether or not compliance with such section unreasonably delays or burdens the awarding of such contracts.

(B) CONSULTATION.—In conducting the study under this paragraph, the Secretary shall consult, as appropriate, with the Inspector General of the Department of Transportation, the Comptroller General, the heads of other Federal agencies, research organizations, industry representatives, employee organizations, safety organizations, and other entities.

Deadline.

(C) REPORT.—Not later than 18 months after the date of the enactment of this Act, the Secretary shall transmit to the Committee on Commerce, Science, and Transportation of the Senate and the Committee on Transportation and Infrastructure of the House of Representatives a report on the results of the study conducted under this paragraph.

## SEC. 102. REVENUE ALIGNED BUDGET AUTHORITY.

(a) IN GENERAL.—Chapter 1 of title 23, United States Code, is amended—

(1) by redesignating the first section 110, relating to uniform transferability of Federal-aid highway funds, as section 126 and moving and inserting such section after section 125 of such chapter; and

(2) in the remaining section 110, relating to revenue aligned budget authority—

PUBLIC LAW 106–159—DEC. 9, 1999          113 STAT. 1753

(A) in subsection (a)(2) by inserting "and the motor carrier safety grant program" after "relief"; and

(B) in subsection (b)(1)(A)—

(i) by inserting "and the motor carrier safety grant program" after "program)";

(ii) by striking "title  and" and inserting "title,"; and

(iii) by inserting ", and subchapter I of chapter 311 of title 49" after "21st Century".

(b) CONFORMING AMENDMENT.—The analysis for such chapter is amended—

(1) by striking

"110. Uniform transferability of Federal-aid highway funds.";

(2) by inserting after the item relating to section 125 the following:

"126. Uniform transferability of Federal-aid highway funds.";

and

(3) in the item relating to section 163 by striking "Sec.".

## SEC. 108. ADDITIONAL FUNDING FOR MOTOR CARRIER SAFETY GRANT PROGRAM.

(a) IN GENERAL.—There are authorized to be appropriated out of the Highway Trust Fund (other than the Mass Transit Account) for the Secretary of Transportation to carry out section 31102 of title 49, United States Code, $75,000,000 for each of fiscal years 2001 through 2003.

(b) INCREASED AUTHORIZATIONS FOR MOTOR CARRIER SAFETY GRANTS.—

(1) IN GENERAL.—Section 4003 of the Transportation Equity Act for the 21st Century (112 Stat. 395–398) is amended by adding at the end the following:

    *49 USC 31104 note.*

"(i) INCREASED AUTHORIZATIONS FOR MOTOR CARRIER SAFETY GRANTS.—The amount made available to incur obligations to carry out section 31102 of title 49, United States Code, by section 31104(a) of such title for each of fiscal years 2001 through 2003 shall be increased by $65,000,000.".

(2) CORRESPONDING REDUCTION TO OBLIGATION CEILING.— Section 1102 of such Act (23 U.S.C. 104 note; 112 Stat. 1115– 1118) is amended by adding at the end the following:

"(j) REDUCTION IN OBLIGATION CEILING.—The limitation on obligations imposed by subsection (a) for each of fiscal years 2001 through 2003 shall be reduced by $65,000,000.".

(c) MAINTENANCE OF EFFORT.—The Secretary may not make, from funds made available by or under this section (including any amendment made by this section), a grant to a State unless the State first enters into a binding agreement with the Secretary that provides that the total expenditures of amounts of the State and its political subdivisions (not including amounts of the United States) for the development or implementation of programs for improving motor carrier safety and enforcement of regulations, standards, and orders of the United States on commercial motor vehicle safety, hazardous materials transportation safety, and compatible State regulations, standards, and orders will be maintained at a level at least equal to the average level of such expenditures for fiscal years 1997, 1998, and 1999.

    *49 USC 31102 note.*

(d) EMERGENCY CDL GRANTS.—Section 31107 of title 49, United States Code, is amended by adding at the end the following:

"(c) EMERGENCY CDL GRANTS.—From amounts made available by subsection (a) for a fiscal year, the Secretary of Transportation may make a grant of up to $1,000,000 to a State whose commercial driver's license program may fail to meet the compliance requirements of section 31311(a).".

49 USC 31102 note.

(e) STATE COMPLIANCE WITH CDL REQUIREMENTS.—

(1) WITHHOLDING OF ALLOCATION FOR NONCOMPLIANCE.— If a State is not in substantial compliance with each requirement of section 31311 of title 49, United States Code, the Secretary shall withhold all amounts that would be allocated, but for this paragraph, to the State from funds made available by or under this section (including any amendment made by this section).

(2) PERIOD OF AVAILABILITY OF WITHHELD FUNDS.—Any funds withheld under paragraph (1) from any State shall remain available until June 30 of the fiscal year for which the funds are authorized to be appropriated.

(3) ALLOCATION OF WITHHELD FUNDS AFTER COMPLIANCE.— If, before the last day of the period for which funds are withheld under paragraph (1) from allocation are to remain available for allocation to a State under paragraph (2), the Secretary determines that the State is in substantial compliance with each requirement of section 31311 of title 49, United States Code, the Secretary shall allocate to the State the withheld funds.

(4) PERIOD OF AVAILABILITY OF SUBSEQUENTLY ALLOCATED FUNDS.—Any funds allocated pursuant to paragraph (3) shall remain available for expenditure until the last day of the first fiscal year following the fiscal year in which the funds are so allocated. Sums not expended at the end of such period are released to the Secretary for reallocation.

(5) EFFECT OF NONCOMPLIANCE.—If, on June 30 of the fiscal year in which funds are withheld from allocation under paragraph (1), the State is not substantially complying with each requirement of section 31311 of title 49, United States Code, the funds are released to the Secretary for reallocation.

49 USC 31100 note.

### SEC. 104. MOTOR CARRIER SAFETY STRATEGY.

(a) SAFETY GOALS.—In conjunction with existing federally required strategic planning efforts, the Secretary shall develop a long-term strategy for improving commercial motor vehicle, operator, and carrier safety. The strategy shall include an annual plan and schedule for achieving, at a minimum, the following goals:

(1) Reducing the number and rates of crashes, injuries, and fatalities involving commercial motor vehicles.

(2) Improving the consistency and effectiveness of commercial motor vehicle, operator, and carrier enforcement and compliance programs.

(3) Identifying and targeting enforcement efforts at high-risk commercial motor vehicles, operators, and carriers.

(4) Improving research efforts to enhance and promote commercial motor vehicle, operator, and carrier safety and performance.

(b) CONTENTS OF STRATEGY.—

PUBLIC LAW 106–159—DEC. 9, 1999          113 STAT. 1755

(1) MEASURABLE GOALS.—The strategy and annual plans under subsection (a) shall include, at a minimum, specific numeric or measurable goals designed to achieve the strategic goals of subsection (a). The purposes of the numeric or measurable goals are as follows:

(A) To increase the number of inspections and compliance reviews to ensure that all high-risk commercial motor vehicles, operators, and carriers are examined.

(B) To eliminate, with meaningful safety measures, the backlog of rulemakings.

(C) To improve the quality and effectiveness of data bases by ensuring that all States and inspectors accurately and promptly report complete safety information.

(D) To eliminate, with meaningful civil and criminal penalties for violations, the backlog of enforcement cases.

(E) To provide for a sufficient number of Federal and State safety inspectors, and provide adequate facilities and equipment, at international border areas.

(2) RESOURCE NEEDS.—In addition, the strategy and annual plans shall include estimates of the funds and staff resources needed to accomplish each activity. Such estimates shall also include the staff skills and training needed for timely and effective accomplishment of each goal.

(3) SAVINGS CLAUSE.—In developing and assessing progress toward meeting the measurable goals set forth in this subsection, the Secretary and the Federal Motor Carrier Safety Administrator shall not take any action that would impinge on the due process rights of motor carriers and drivers.

(c) SUBMISSION WITH THE PRESIDENT'S BUDGET.—Beginning with fiscal year 2001 and each fiscal year thereafter, the Secretary shall submit to Congress the strategy and annual plan at the same time as the President's budget submission.

(d) ANNUAL PERFORMANCE.—

(1) ANNUAL PERFORMANCE AGREEMENT.—For each of fiscal years 2001 through 2003, the following officials shall enter into annual performance agreements:

(A) The Secretary and the Federal Motor Carrier Safety Administrator.

(B) The Administrator and the Deputy Federal Motor Carrier Safety Administrator.

(C) The Administrator and the Chief Safety Officer of the Federal Motor Carrier Safety Administration.

(D) The Administrator and the regulatory ombudsman of the Administration designated by the Administrator under subsection (f).

(2) GOALS.—Each annual performance agreement entered into under paragraph (1) shall include the appropriate numeric or measurable goals of subsection (b).

(3) PROGRESS ASSESSMENT.—Consistent with the current performance appraisal system of the Department of Transportation, the Secretary shall assess the progress of each official (other than the Secretary) referred to in paragraph (1) toward achieving the goals in his or her performance agreement. The Secretary shall convey the assessment to such official, including identification of any deficiencies that should be remediated before the next progress assessment.

113 STAT. 1756          PUBLIC LAW 106–159—DEC. 9, 1999

(4) ADMINISTRATION.—In deciding whether or not to award a bonus or other achievement award to an official of the Administration who is a party to a performance agreement required by this subsection, the Secretary shall give substantial weight to whether the official has made satisfactory progress toward meeting the goals of his or her performance agreement.

(e) ACHIEVEMENT OF GOALS.—

(1) PROGRESS ASSESSMENT.—No less frequently than semiannually, the Secretary and the Administrator shall assess the progress of the Administration toward achieving the strategic goals of subsection (a). The Secretary and the Administrator shall convey their assessment to the employees of the Administration and shall identify any deficiencies that should be remediated before the next progress assessment.

(2) REPORT TO CONGRESS.—The Secretary shall report annually to Congress the contents of each performance agreement entered into under subsection (d) and the official's performance relative to the goals of the performance agreement. In addition, the Secretary shall report to Congress on the performance of the Administration relative to the goals of the motor carrier safety strategy and annual plan under subsection (a).

(f) EXPEDITING REGULATORY PROCEEDINGS.—The Administrator shall designate a regulatory ombudsman to expedite rulemaking proceedings. The Secretary and the Administrator shall each delegate to the ombudsman such authority as may be necessary for the ombudsman to expedite rulemaking proceedings of the Administration to comply with statutory and internal departmental deadlines, including authority to—

(1) make decisions to resolve disagreements between officials in the Administration who are participating in a rulemaking process; and

(2) ensure that sufficient staff are assigned to rulemaking projects to meet all deadlines.

49 USC 31100 note.

**SEC. 105. COMMERCIAL MOTOR VEHICLE SAFETY ADVISORY COMMITTEE.**

(a) ESTABLISHMENT.—The Secretary may establish a commercial motor vehicle safety advisory committee to provide advice and recommendations on a range of motor carrier safety issues.

(b) COMPOSITION.—The members of the advisory committee shall be appointed by the Secretary and shall include representatives of the motor carrier industry, drivers, safety advocates, manufacturers, safety enforcement officials, law enforcement agencies of border States, and other individuals affected by rulemakings under consideration by the Department of Transportation. Representatives of a single interest group may not constitute a majority of the members of the advisory committee.

(c) FUNCTION.—The advisory committee shall provide advice to the Secretary on commercial motor vehicle safety regulations and other matters relating to activities and functions of the Federal Motor Carrier Safety Administration.

(d) TERMINATION DATE.—The advisory committee shall remain in effect until September 30, 2003.

49 USC 113 note.

**SEC. 106. SAVINGS PROVISION.**

(a) TRANSFER OF ASSETS AND PERSONNEL.—Except as otherwise provided in this Act and the amendments made by this Act, those

personnel, property, and records employed, used, held, available, or to be made available in connection with a function transferred to the Federal Motor Carrier Safety Administration by this Act shall be transferred to the Administration for use in connection with the functions transferred, and unexpended balances of appropriations, allocations, and other funds of the Office of Motor Carrier Safety (including any predecessor entity) shall also be transferred to the Administration.

(b) LEGAL DOCUMENTS.—All orders, determinations, rules, regulations, permits, grants, loans, contracts, settlements, agreements, certificates, licenses, and privileges—

(1) that have been issued, made, granted, or allowed to become effective by the Office, any officer or employee of the Office, or any other Government official, or by a court of competent jurisdiction, in the performance of any function that is transferred by this Act or the amendments made by this Act; and

(2) that are in effect on the effective date of such transfer (or become effective after such date pursuant to their terms as in effect on such effective date),

shall continue in effect according to their terms until modified, terminated, superseded, set aside, or revoked in accordance with law by the Administration, any other authorized official, a court of competent jurisdiction, or operation of law.

(c) PROCEEDINGS.—

(1) IN GENERAL.—The provisions of this Act shall not affect any proceedings or any application for any license pending before the Office at the time this Act takes effect, insofar as those functions are transferred by this Act; but such proceedings and applications, to the extent that they relate to functions so transferred, shall be continued. Orders shall be issued in such proceedings, appeals shall be taken therefrom, and payments shall be made pursuant to such orders, as if this Act had not been enacted; and orders issued in any such proceedings shall continue in effect until modified, terminated, superseded, or revoked by a duly authorized official, by a court of competent jurisdiction, or by operation of law.

(2) STATUTORY CONSTRUCTION.—Nothing in this subsection shall be deemed to prohibit the discontinuance or modification of any proceeding described in paragraph (1) under the same terms and conditions and to the same extent that such proceeding could have been discontinued or modified if this Act had not been enacted.

(3) ORDERLY TRANSFER.—The Secretary is authorized to provide for the orderly transfer of pending proceedings from the Office.

(d) SUITS.—

(1) IN GENERAL.—This Act shall not affect suits commenced before the date of the enactment of this Act, except as provided in paragraphs (2) and (3). In all such suits, proceeding shall be had, appeals taken, and judgments rendered in the same manner and with the same effect as if this Act had not been enacted.

(2) SUITS BY OR AGAINST OMCS.—Any suit by or against the Office begun before January 1, 2000, shall be continued, insofar as it involves a function retained and transferred under this Act, with the Administration (to the extent the suit involves

functions transferred to the Administration under this Act) substituted for the Office.

(3) REMANDED CASES.—If the court in a suit described in paragraph (1) remands a case to the Administration, subsequent proceedings related to such case shall proceed in accordance with applicable law and regulations as in effect at the time of such subsequent proceedings.

(e) CONTINUANCE OF ACTIONS AGAINST OFFICERS.—No suit, action, or other proceeding commenced by or against any officer in his official capacity as an officer of the Office shall abate by reason of the enactment of this Act. No cause of action by or against the Office, or by or against any officer thereof in his official capacity, shall abate by reason of the enactment of this Act.

(f) EXERCISE OF AUTHORITIES.—Except as otherwise provided by law, an officer or employee of the Administration may, for purposes of performing a function transferred by this Act or the amendments made by this Act, exercise all authorities under any other provision of law that were available with respect to the performance of that function to the official responsible for the performance of the function immediately before the effective date of the transfer of the function under this Act or the amendments made by this Act.

(g) REFERENCES.—Any reference to the Office in any Federal law, Executive order, rule, regulation, or delegation of authority, or any document of or pertaining to the Office or an officer or employee of the Office is deemed to refer to the Administration or a member or employee of the Administration, as appropriate.

**SEC. 107. EFFECTIVE DATE.**

49 USC 104 note.

(a) IN GENERAL.—This Act shall take effect on the date of the enactment of this Act; except that the amendments made by section 101 shall take effect on January 1, 2000.

31 USC 1105 note.

(b) BUDGET SUBMISSIONS.—The President's budget submission for fiscal year 2001 and each fiscal year thereafter shall reflect the establishment of the Federal Motor Carrier Safety Administration in accordance with this Act.

# TITLE II—COMMERCIAL MOTOR VEHICLE AND DRIVER SAFETY

**SEC. 201. DISQUALIFICATIONS.**

(a) DRIVING WHILE DISQUALIFIED AND CAUSING A FATALITY.—

(1) FIRST VIOLATION.—Section 31310(b)(1) of title 49, United States Code, is amended—

(A) by striking "or" at the end of subparagraph (B);

(B) by striking the period at the end of subparagraph (C) and inserting a semicolon; and

(C) by adding at the end the following:

"(D) committing a first violation of driving a commercial motor vehicle when the individual's commercial driver's license is revoked, suspended, or canceled based on the individual's operation of a commercial motor vehicle or when the individual is disqualified from operating a commercial motor vehicle based on the individual's operation of a commercial motor vehicle; or

"(E) convicted of causing a fatality through negligent or criminal operation of a commercial motor vehicle.".

(2) SECOND AND MULTIPLE VIOLATIONS.—Section 31310(c)(1) of such title is amended—

(A) by striking "or" at the end of subparagraph (C);

(B) by redesignating subparagraph (D) as subparagraph (F);

(C) by inserting after subparagraph (C) the following:

"(D) committing more than one violation of driving a commercial motor vehicle when the individual's commercial driver's license is revoked, suspended, or canceled based on the individual's operation of a commercial motor vehicle or when the individual is disqualified from operating a commercial motor vehicle based on the individual's operation of a commercial motor vehicle;

"(E) convicted of more than one offense of causing a fatality through negligent or criminal operation of a commercial motor vehicle; or"; and

(D) in subparagraph (F) (as redesignated by subparagraph (B) of this paragraph) by striking "clauses (A)–(C) of this paragraph" and inserting "subparagraphs (A) through (E)".

(3) CONFORMING AMENDMENT.—Section 31301(12)(C) of such title is amended by inserting ", other than a violation to which section 31310(b)(1)(E) or 31310(c)(1)(E) applies" after "a fatality".

(b) EMERGENCY DISQUALIFICATION; NONCOMMERCIAL MOTOR VEHICLE CONVICTIONS.—Section 31310 of such title is amended—

(1) by redesignating subsections (f), (g), and (h) as subsections (h), (i), and (j), respectively;

(2) by inserting after subsection (e) the following:

"(f) EMERGENCY DISQUALIFICATION.—

"(1) LIMITED DURATION.—The Secretary shall disqualify an individual from operating a commercial motor vehicle for not to exceed 30 days if the Secretary determines that allowing the individual to continue to operate a commercial motor vehicle would create an imminent hazard (as such term is defined in section 5102).

"(2) AFTER NOTICE AND HEARING.—The Secretary shall disqualify an individual from operating a commercial motor vehicle for more than 30 days if the Secretary determines, after notice and an opportunity for a hearing, that allowing the individual to continue to operate a commercial motor vehicle would create an imminent hazard (as such term is defined in section 5102).

"(g) NONCOMMERCIAL MOTOR VEHICLE CONVICTIONS.—

"(1) ISSUANCE OF REGULATIONS.—Not later than 1 year after the date of the enactment of this Act, the Secretary shall issue regulations providing for the disqualification by the Secretary from operating a commercial motor vehicle of an individual who holds a commercial driver's license and who has been convicted of— <span style="float:right">Deadline.</span>

"(A) a serious offense involving a motor vehicle (other than a commercial motor vehicle) that has resulted in the revocation, cancellation, or suspension of the individual's license; or

"(B) a drug or alcohol related offense involving a motor vehicle (other than a commercial motor vehicle).

"(2) REQUIREMENTS FOR REGULATIONS.—Regulations issued under paragraph (1) shall establish the minimum periods for which the disqualifications shall be in effect, but in no case shall the time periods for disqualification for noncommercial motor vehicle violations be more stringent than those for offenses or violations involving a commercial motor vehicle. The Secretary shall determine such periods based on the seriousness of the offenses on which the convictions are based."; and

(3) in subsection (h) (as redesignated by paragraph (1) of this subsection) by striking "(b)–(e)" each place it appears and inserting "(b) through (g)".

(c) SERIOUS TRAFFIC VIOLATIONS.—Section 31301(12) of such title is amended—

(1) by striking "and" at the end of subparagraph (C);

(2) by redesignating subparagraph (D) as subparagraph (G); and

(3) by inserting after subparagraph (C) the following:

"(D) driving a commercial motor vehicle when the individual has not obtained a commercial driver's license;

"(E) driving a commercial motor vehicle when the individual does not have in his or her possession a commercial driver's license unless the individual provides, by the date that the individual must appear in court or pay any fine with respect to the citation, to the enforcement authority that issued the citation proof that the individual held a valid commercial driver's license on the date of the citation;

"(F) driving a commercial motor vehicle when the individual has not met the minimum testing standards—

"(i) under section 31305(a)(3) for the specific class of vehicle the individual is operating; or

"(ii) under section 31305(a)(5) for the type of cargo the vehicle is carrying; and".

(d) CONFORMING AMENDMENTS.—Section 31305(b)(1) of such title is amended—

(1) by striking "to operate the vehicle"; and

(2) by inserting before the period at the end the following: "to operate the vehicle and has a commercial driver's license to operate the vehicle".

## SEC. 202. REQUIREMENTS FOR STATE PARTICIPATION.

(a) REQUESTS FOR DRIVING RECORD INFORMATION.—Section 31311(a)(6) of title 49, United States Code, is amended—

(1) by inserting "or renewing such a license" before the comma; and

(2) by striking "commercial" the second place it appears.

(b) RECORDING OF VIOLATIONS.—Section 31311(a)(8) of such title is amended by inserting before the period at the end the following: ", and the violation that resulted in the disqualification, revocation, suspension, or cancellation shall be recorded".

(c) NOTIFICATION OF STATE OFFICIALS.—Section 31311(a)(9) of such title is amended to read as follows:

"(9) If an individual violates a State or local law on motor vehicle traffic control (except a parking violation) and the individual—

"(A) has a commercial driver's license issued by another State; or

Case 1:11-cv-03137-ERK-RER   Document 1   Filed 06/30/11   Page 40 of 52 PageID #: 40

"(B) is operating a commercial vehicle without a commercial driver's license and has a driver's license issued by another State,

the State in which the violation occurred shall notify a State official designated by the issuing State of the violations not later than 10 days after the date the individual is found to have committed the violation.".

(d) PROVISIONAL LICENSES.—Section 31311(a)(10) of such title is amended—

(1) by striking "(10)" and inserting "(10)(A)"; and

(2) by adding at the end the following:

"(B) The State may not issue a special license or permit (including a provisional or temporary license) to an individual who holds a commercial driver's license that permits the individual to drive a commercial motor vehicle during a period in which—

"(i) the individual is disqualified from operating a commercial motor vehicle; or

"(ii) the individual's driver's license is revoked, suspended, or canceled.".

(e) PENALTIES.—Section 31311(a)(13) of such title is amended—

(1) by inserting "consistent with this chapter that" after "penalties"; and

(2) by striking "vehicle" the first place it appears and all that follows through the period at the end and inserting "vehicle.".

(f) RECORDS OF VIOLATIONS.—Section 31311(a) of such title is amended by adding at the end the following:

"(18) The State shall maintain, as part of its driver information system, a record of each violation of a State or local motor vehicle traffic control law while operating a motor vehicle (except a parking violation) for each individual who holds a commercial driver's license. The record shall be available upon request to the individual, the Secretary, employers, prospective employers, State licensing and law enforcement agencies, and their authorized agents.".

(g) MASKING.—Section 31311(a) of such title is further amended by adding at the end the following:

"(19) The State shall—

"(A) record in the driving record of an individual who has a commercial driver's license issued by the State; and

"(B) make available to all authorized persons and governmental entities having access to such record,

all information the State receives under paragraph (9) with respect to the individual and every violation by the individual involving a motor vehicle (including a commercial motor vehicle) of a State or local law on traffic control (except a parking violation), not later than 10 days after the date of receipt of such information or the date of such violation, as the case may be. The State may not allow information regarding such violations to be withheld or masked in any way from the record of an individual possessing a commercial driver's license.".

(h) NONCOMMERCIAL MOTOR VEHICLE CONVICTIONS.—Section 31311(a) of such title is further amended by adding at the end the following:

"(20) The State shall revoke, suspend, or cancel the commercial driver's license of an individual in accordance with regulations issued by the Secretary to carry out section 31310(g).".

**SEC. 203. STATE NONCOMPLIANCE.**

(a) IN GENERAL.—Chapter 313 of title 49, United States Code, is amended by inserting after section 31311 the following:

## "§ 31312. Decertification authority

"(a) IN GENERAL.—If the Secretary of Transportation determines that a State is in substantial noncompliance with this chapter, the Secretary shall issue an order to—

"(1) prohibit that State from carrying out licensing procedures under this chapter; and

"(2) prohibit that State from issuing any commercial driver's licenses until such time the Secretary determines such State is in substantial compliance with this chapter.

"(b) EFFECT ON OTHER STATES.—A State (other than a State subject to an order under subsection (a)) may issue a non-resident commercial driver's license to an individual domiciled in a State that is prohibited from such activities under subsection (a) if that individual meets all requirements of this chapter and the non-resident licensing requirements of the issuing State.

"(c) PREVIOUSLY ISSUED LICENSES.—Nothing in this section shall be construed as invalidating or otherwise affecting commercial driver's licenses issued by a State before the date of issuance of an order under subsection (a) with respect to the State.".

(b) CONFORMING AMENDMENT.—The chapter analysis for chapter 313 of such title is amended by inserting after the item relating to section 31311 the following:

"31312. Decertification authority.".

**SEC. 204. CHECKS BEFORE ISSUANCE OF DRIVERS LICENSES.**

Section 30304 of title 49, United States Code, is amended by adding at the end the following:

"(e) DRIVER RECORD INQUIRY.—Before issuing a motor vehicle operator's license to an individual or renewing such a license, a State shall request from the Secretary information from the National Driver Register under section 30302 and the commercial driver's license information system under section 31309 on the individual's driving record.".

**SEC. 205. REGISTRATION ENFORCEMENT.**

Section 13902 of title 49, United States Code, is amended—

(1) by redesignating subsection (e) as subsection (f); and

(2) by inserting after subsection (d) the following:

"(e) PENALTIES FOR FAILURE TO COMPLY WITH REGISTRATION REQUIREMENTS.—In addition to other penalties available under law, motor carriers that fail to register their operations as required by this section or that operate beyond the scope of their registrations may be subject to the following penalties:

"(1) OUT-OF-SERVICE ORDERS.—If, upon inspection or investigation, the Secretary determines that a motor vehicle providing transportation requiring registration under this section is operating without a registration or beyond the scope of its registration, the Secretary may order the vehicle out-of-service. Subsequent to the issuance of the out-of-service order, the

PUBLIC LAW 106–159—DEC. 9, 1999          113 STAT. 1763

Secretary shall provide an opportunity for review in accordance with section 554 of title 5, United States Code, except that such review shall occur not later than 10 days after issuance of such order.

"(2) PERMISSION FOR OPERATIONS.—A person domiciled in a country contiguous to the United States with respect to which an action under subsection (c)(1)(A) or (c)(1)(B) is in effect and providing transportation for which registration is required under this section shall maintain evidence of such registration in the motor vehicle when the person is providing the transportation. The Secretary shall not permit the operation in interstate commerce in the United States of any motor vehicle in which there is not a copy of the registration issued pursuant to this section.".

## SEC. 206. DELINQUENT PAYMENT OF PENALTIES.

(a) REVOCATION OF REGISTRATION.—Section 13905(c) of title 49, United States Code, is amended—

(1) by inserting "(1) IN GENERAL.—" before "On application";

(2) by inserting "(A)" before "suspend";

(3) by striking the period at the end of the second sentence and inserting "; and (B) suspend, amend, or revoke any part of the registration of a motor carrier, broker, or freight forwarder: (i) for failure to pay a civil penalty imposed under chapter 5, 51, 149, or 311 of this title; or (ii) for failure to arrange and abide by an acceptable payment plan for such civil penalty, within 90 days of the time specified by order of the Secretary for the payment of such penalty. Subparagraph (B) shall not apply to any person who is unable to pay a civil penalty because such person is a debtor in a case under chapter 11 of title 11, United States Code.

"(2) REGULATIONS.—Not later than 12 months after the date of the enactment of this paragraph, the Secretary, after notice and opportunity for public comment, shall issue regulations to provide for the suspension, amendment, or revocation of a registration under this part for failure to pay a civil penalty as provided in paragraph (1)(B).";  and — Deadline.

(4) by indenting paragraph (1) (as designated by paragraph (1) of this section) and aligning such paragraph with paragraph (2) of such section (as added by paragraph (3) of this section).

(b) PROHIBITED TRANSPORTATION BY COMMERCIAL MOTOR VEHICLE OPERATORS.—Section 521(b) of such title is amended—

(1) by redesignating paragraphs (8) through (13) as paragraphs (9) through (14), respectively; and

(2) by inserting after paragraph (7) the following:

"(8) PROHIBITION ON OPERATION IN INTERSTATE COMMERCE AFTER NONPAYMENT OF PENALTIES.—

"(A) IN GENERAL.—An owner or operator of a commercial motor vehicle against whom a civil penalty is assessed under this chapter or chapter 51, 149, or 311 of this title and who does not pay such penalty or fails to arrange and abide by an acceptable payment plan for such civil penalty may not operate in interstate commerce beginning on the 91st day after the date specified by order of the Secretary for payment of such penalty. This paragraph shall not apply to any person who is unable to pay a

civil penalty because such person is a debtor in a case under chapter 11 of title 11, United States Code.

*Deadline.*

"(B) REGULATIONS.—Not later than 12 months after the date of the enactment of this paragraph, the Secretary, after notice and an opportunity for public comment, shall issue regulations setting forth procedures for ordering commercial motor vehicle owners and operators delinquent in paying civil penalties to cease operations until payment has been made.".

## SEC. 207. STATE COOPERATION IN REGISTRATION ENFORCEMENT.

Section 31102(b)(1) of title 49, United States Code, is amended—

(1) by aligning subparagraph (A) with subparagraph (B) of such section; and

(2) by striking subparagraph (R) and inserting the following:

"(R) ensures that the State will cooperate in the enforcement of registration requirements under section 13902 and financial responsibility requirements under sections 13906, 31138, and 31139 and regulations issued thereunder;".

## SEC. 208. IMMINENT HAZARD.

Section 521(b)(5)(B) of title 49, United States Code, is amended by striking "is likely to result in" and inserting "substantially increases the likelihood of".

## SEC. 209. HOUSEHOLD GOODS AMENDMENTS.

(a) DEFINITION OF HOUSEHOLD GOODS.—Section 13102(10)(A) of title 49, United States Code, is amended by striking ", including" and all that follows through "dwelling," and inserting ", except such term does not include property moving from a factory or store, other than property that the householder has purchased with the intent to use in his or her dwelling and is transported at the request of, and the transportation charges are paid to the carrier by, the householder;".

(b) ARBITRATION REQUIREMENTS.—Section 14708(b)(6) of such title is amended by striking "$1,000" each place it appears and inserting "$5,000".

*49 USC 14104 note.*

(c) STUDY OF ENFORCEMENT OF CONSUMER PROTECTION RULES IN THE HOUSEHOLD GOODS MOVING INDUSTRY.—The Comptroller General shall conduct a study of the effectiveness of the Department of Transportation's enforcement of household goods consumer protection rules under title 49, United States Code. The study shall also include a review of other potential methods of enforcing such rules, including allowing States to enforce such rules.

## SEC. 210. NEW MOTOR CARRIER ENTRANT REQUIREMENTS.

(a) SAFETY REVIEWS.—Section 31144 of title 49, United States Code, is amended by adding at the end the following:

*Regulations.*

"(c) SAFETY REVIEWS OF NEW OPERATORS.—

"(1) IN GENERAL.—The Secretary shall require, by regulation, each owner and each operator granted new operating authority, after the date on which section 31148(b) is first implemented, to undergo a safety review within the first 18 months after the owner or operator, as the case may be, begins operations under such authority.

"(2) ELEMENTS.—In the regulations issued pursuant to paragraph (1), the Secretary shall establish the elements of the safety review, including basic safety management controls. In establishing such elements, the Secretary shall consider their effects on small businesses and shall consider establishing alternate locations where such reviews may be conducted for the convenience of small businesses.

"(3) PHASE-IN OF REQUIREMENT.—The Secretary shall phase in the requirements of paragraph (1) in a manner that takes into account the availability of certified motor carrier safety auditors.

"(4) NEW ENTRANT AUTHORITY.—Notwithstanding any other provision of this title, any new operating authority granted after the date on which section 31148(b) is first implemented shall be designated as new entrant authority until the safety review required by paragraph (1) is completed.".

(b) MINIMUM REQUIREMENTS.—The Secretary shall initiate a rulemaking to establish minimum requirements for applicant motor carriers, including foreign motor carriers, seeking Federal interstate operating authority to ensure applicant carriers are knowledgeable about applicable Federal motor carrier safety standards. As part of that rulemaking, the Secretary shall consider the establishment of a proficiency examination for applicant motor carriers as well as other requirements to ensure such applicants understand applicable safety regulations before being granted operating authority.

49 USC 31144 note.

## SEC. 211. CERTIFICATION OF SAFETY AUDITORS.

(a) IN GENERAL.—Chapter 311 of title 49, United States Code, is amended by adding at the end the following:

### "§ 31148. Certified motor carrier safety auditors

"(a) IN GENERAL.—Not later than 1 year after the date of the enactment of this section, the Secretary of Transportation shall complete a rulemaking to improve training and provide for the certification of motor carrier safety auditors, including private contractors, to conduct safety inspection audits and reviews described in subsection (b).

Deadline.

"(b) CERTIFIED INSPECTION AUDIT REQUIREMENT.—Not later than 1 year after completion of the rulemaking required by subsection (a), any safety inspection audit or review required by, or based on the authority of, this chapter or chapter 5, 313, or 315 of this title and performed after December 31, 2002, shall be conducted by—

Deadline.

"(1) a motor carrier safety auditor certified under subsection (a); or

"(2) a Federal or State employee who, on the date of the enactment of this section, was qualified to perform such an audit or review.

"(c) EXTENSION.—If the Secretary determines that subsection (b) cannot be implemented within the 1-year period established by that subsection and notifies the Committee on Commerce, Science, and Transportation of the Senate and the Committee on Transportation and Infrastructure of the House of Representatives of the determination and the reasons therefor, the Secretary may extend the deadline for compliance with subsection (b) by not more than 12 months.

"(d) APPLICATION WITH OTHER AUTHORITY.—The Secretary may not delegate the Secretary's authority to private contractors to issue ratings or operating authority, and nothing in this section authorizes any private contractor to issue ratings or operating authority.

"(e) OVERSIGHT RESPONSIBILITY.—The Secretary shall have authority over any motor carrier safety auditor certified under subsection (a), including the authority to decertify a motor carrier safety auditor.".

(b) CONFORMING AMENDMENT.—The analysis for such chapter 311 is amended by adding at the end the following:

"31148. Certified motor carrier safety auditors.".

### SEC. 212. COMMERCIAL VAN RULEMAKING.

*Deadline.*

Not later than 1 year after the date of the enactment of this Act, the Secretary shall complete Department of Transportation's rulemaking, Docket No. FHWA–99–5710, to amend Federal motor carrier safety regulations to determine which motor carriers operating commercial motor vehicles designed or used to transport between 9 and 15 passengers (including the driver) for compensation shall be covered. At a minimum, the rulemaking shall apply such regulations to—

(1) commercial vans commonly referred to as "camionetas"; and

(2) those commercial vans operating in interstate commerce outside commercial zones that have been determined to pose serious safety risks.

In no case should the rulemaking exempt from such regulations all motor carriers operating commercial vehicles designed or used to transport between 9 and 15 passengers (including the driver) for compensation.

### SEC. 213. 24-HOUR STAFFING OF TELEPHONE HOTLINE.

Section 4017 of the Transportation Equity Act for the 21st Century (49 U.S.C. 31143 note; 112 Stat. 413) is amended—

(1) by redesignating subsections (c) and (d) as subsections (d) and (e), respectively;

(2) by inserting after subsection (b) the following:

"(c) STAFFING.—The toll-free telephone system shall be staffed 24 hours a day 7 days a week by individuals knowledgeable about Federal motor carrier safety regulations and procedures."; and

(3) in subsection (e) (as redesignated by paragraph (1) of this section)—

(A) by striking "104(a)" and inserting "104(a)(1)(B)"; and

(B) by striking "for each of fiscal years 1999" and inserting "for fiscal year 1999 and $375,000 for each of fiscal years 2000".

49 USC 31305 note.
Regulations.

### SEC. 214. CDL SCHOOL BUS ENDORSEMENT.

The Secretary shall conduct a rulemaking to establish a special commercial driver's license endorsement for drivers of school buses. The endorsement shall, at a minimum—

(1) include a driving skills test in a school bus; and

(2) address proper safety procedures for—

(A) loading and unloading children;

(B) using emergency exits; and

(C) traversing highway rail grade crossings.

PUBLIC LAW 106-159—DEC. 9, 1999        113 STAT. 1767

**SEC. 215. MEDICAL CERTIFICATE.**

The Secretary shall initiate a rulemaking to provide for a Federal medical qualification certificate to be made a part of commercial driver's licenses.

49 USC 31305 note.
Regulations.

**SEC. 216. IMPLEMENTATION OF INSPECTOR GENERAL RECOMMENDA-
TIONS.**

(a) IN GENERAL.—The Secretary shall implement the safety improvement recommendations provided for in the Department of Transportation Inspector General's Report TR-1999-091, except to the extent that such recommendations are specifically addressed in sections 206, 208, 217, and 222 of this Act, including any amendments made by such sections.

(b) REPORTS TO CONGRESS.—

(1) REPORTS BY THE SECRETARY.—Not later than 90 days after the date of the enactment of this Act, and every 90 days thereafter until each of the recommendations referred to in subsection (a) has been implemented, the Secretary shall transmit to the Committee on Commerce, Science, and Transportation of the Senate and the Committee on Transportation and Infrastructure of the House of Representatives a report on the specific actions taken to implement such recommendations.

Deadline.

(2) REPORTS BY THE INSPECTOR GENERAL.—The Inspector General shall periodically transmit to the committees referred to in paragraph (1) a report assessing the Secretary's progress in implementing the recommendations referred to in subsection (a) and analyzing the number of violations cited by safety inspectors and the level of fines assessed and collected for such violations, and of the number of cases in which there are findings of extraordinary circumstances under section 222(c) of this Act and the circumstances in which these findings are made.

**SEC. 217. PERIODIC REFILING OF MOTOR CARRIER IDENTIFICATION
REPORTS.**

The Secretary shall amend section 385.21 of the Department of Transportation's regulations (49 CFR 385.21) to require periodic updating, not more frequently than once every 2 years, of the motor carrier identification report, form MCS-150, filed by each motor carrier conducting operations in interstate or foreign commerce. The initial update shall occur not later than 1 year after the date of the enactment of this Act.

Deadline.

**SEC. 218. BORDER STAFFING STANDARDS.**

(a) DEVELOPMENT AND IMPLEMENTATION.—Not later than 1 year after the date of the enactment of this Act, the Secretary shall develop and implement appropriate staffing standards for Federal and State motor carrier safety inspectors in international border areas.

49 USC 31133 note.
Deadline.

(b) FACTORS TO BE CONSIDERED.—In developing standards under subsection (a), the Secretary shall consider volume of traffic, hours of operation of the border facility, types of commercial motor vehicles, types of cargo, delineation of responsibility between Federal and State inspectors, and such other factors as the Secretary determines appropriate.

(c) MAINTENANCE OF EFFORT.—The standards developed and implemented under subsection (a) shall ensure that the United

113 STAT. 1768        PUBLIC LAW 106–159—DEC. 9, 1999

States and each State will not reduce its respective level of staffing of motor carrier safety inspectors in international border areas from its average level staffing for fiscal year 2000.

(d) BORDER COMMERCIAL MOTOR VEHICLE AND SAFETY ENFORCEMENT PROGRAMS.—

(1) ENFORCEMENT.—If, on October 1, 2001, and October 1 of each fiscal year thereafter, the Secretary has not ensured that the levels of staffing required by the standards developed under subsection (a) are deployed, the Secretary should designate the amount made available for allocation under section 31104(f)(2)(B) of title 49, United States Code, for such fiscal year for States, local governments, and other persons for carrying out border commercial motor vehicle safety programs and enforcement activities and projects.

(2) ALLOCATION.—If the Secretary makes a designation of an amount under paragraph (1), such amount shall be allocated by the Secretary to State agencies, local governments, and other persons that use and train qualified officers and employees in coordination with State motor vehicle safety agencies.

(3) LIMITATION.—If the Secretary makes a designation pursuant to paragraph (1) for a fiscal year, the Secretary may not make a designation under section 31104(f)(2)(B) of title 49, United States Code, for such fiscal year.

49 USC 14901
note.

SEC. 219. FOREIGN MOTOR CARRIER PENALTIES AND DISQUALIFICATIONS.

(a) GENERAL RULE.—Subject to subsections (b) and (c), a foreign motor carrier or foreign motor private carrier (as such terms are defined under section 13102 of title 49, United States Code) that operates without authority, before the implementation of the land transportation provisions of the North American Free Trade Agreement, outside the boundaries of a commercial zone along the United States-Mexico border shall be liable to the United States for a civil penalty and shall be disqualified from operating a commercial motor vehicle anywhere within the United States as provided in subsections (b) and (c).

(b) PENALTY FOR INTENTIONAL VIOLATION.—The civil penalty for an intentional violation of subsection (a) by a carrier shall not be more than $10,000 and may include a disqualification from operating a commercial motor vehicle anywhere within the United States for a period of not more than 6 months.

(c) PENALTY FOR PATTERN OF INTENTIONAL VIOLATIONS.—The civil penalty for a pattern of intentional violations of subsection (a) by a carrier shall not be more than $25,000 and the carrier shall be disqualified from operating a commercial motor vehicle anywhere within the United States and the disqualification may be permanent.

(d) LEASING.—Before the implementation of the land transportation provisions of the North American Free Trade Agreement, during any period in which a suspension, condition, restriction, or limitation imposed under section 13902(c) of title 49, United States Code, applies to a motor carrier (as defined in section 13902(e) of such title), that motor carrier may not lease a commercial motor vehicle to another motor carrier or a motor private carrier to transport property in the United States.

(e) SAVINGS CLAUSE.—No provision of this section may be enforced if it is inconsistent with any international agreement of the United States.

(f) ACTS OF EMPLOYEES.—The actions of any employee driver of a foreign motor carrier or foreign motor private carrier committed without the knowledge of the carrier or committed unintentionally shall not be grounds for penalty or disqualification under this section.

### SEC. 220. TRAFFIC LAW INITIATIVE.

49 USC 31131 note.

(a) IN GENERAL.—In cooperation with one or more States, the Secretary may carry out a program to develop innovative methods of improving motor carrier compliance with traffic laws. Such methods may include the use of photography and other imaging technologies.

(b) REPORT.—The Secretary shall transmit to Congress a report on the results of any program conducted under this section, together with any recommendations as the Secretary determines appropriate.

### SEC. 221. STATE-TO-STATE NOTIFICATION OF VIOLATIONS DATA.

49 USC 31311 note.

(a) DEVELOPMENT.—In cooperation with the States, the Secretary shall develop a uniform system to support the electronic transmission of data State-to-State on convictions for all motor vehicle traffic control law violations by individuals possessing a commercial drivers' licenses as required by paragraphs (9) and (19) of section 31311(a) of title 49, United States Code.

(b) STATUS REPORT.—Not later than 2 years after the date of the enactment of this Act, the Secretary shall transmit to the Committee on Commerce, Science, and Transportation of the Senate and the Committee on Transportation and Infrastructure of the House of Representatives a report on the status of the implementation of this section.

Deadline.

### SEC. 222. MINIMUM AND MAXIMUM ASSESSMENTS.

49 USC 521 note.

(a) IN GENERAL.—The Secretary of Transportation should ensure that motor carriers operate safely by imposing civil penalties at a level calculated to ensure prompt and sustained compliance with Federal motor carrier safety and commercial driver's license laws.

(b) ESTABLISHMENT.—The Secretary—

(1) should establish and assess minimum civil penalties for each violation of a law referred to in subsection (a); and

(2) shall assess the maximum civil penalty for each violation of a law referred to in subsection (a) by any person who is found to have committed a pattern of violations of critical or acute regulations issued to carry out such a law or to have previously committed the same or a related violation of critical or acute regulations issued to carry out such a law.

(c) EXTRAORDINARY CIRCUMSTANCES.—If the Secretary determines and documents that extraordinary circumstances exist which merit the assessment of any civil penalty lower than any level established under subsection (b), the Secretary may assess such lower penalty. In cases where a person has been found to have previously committed the same or a related violation of critical or acute regulations issued to carry out a law referred to in subsection (a), extraordinary circumstances may be found to exist when the Secretary determines that repetition of such violation does not demonstrate a failure to take appropriate remedial action.

113 STAT. 1770          PUBLIC LAW 106–159—DEC. 9, 1999

(d) REPORT TO CONGRESS.—

(1) IN GENERAL.—The Secretary shall conduct a study of the effectiveness of the revised civil penalties established in the Transportation Equity Act for the 21st Century and this Act in ensuring prompt and sustained compliance with Federal motor carrier safety and commercial driver's license laws.

(2) SUBMISSION TO CONGRESS.—The Secretary shall transmit the results of such study and any recommendations to Congress by September 30, 2002.

SEC. 223. MOTOR CARRIER SAFETY PROGRESS REPORT.

Not later than May 25, 2000, the Secretary shall transmit to the Committee on Commerce, Science, and Transportation of the Senate and the Committee on Transportation and Infrastructure of the House of Representatives a status report on the Department of Transportation's quantitative progress toward reducing motor carrier fatalities by 50 percent by the year 2009.

49 USC 31100 note.

SEC. 224. STUDY OF COMMERCIAL MOTOR VEHICLE CRASH CAUSATION.

(a) OBJECTIVES.—The Secretary shall conduct a comprehensive study to determine the causes of, and contributing factors to, crashes that involve commercial motor vehicles. The study shall also identify data requirements and collection procedures, reports, and other measures that will improve the Department of Transportation's and States' ability to—

(1) evaluate future crashes involving commercial motor vehicles;

(2) monitor crash trends and identify causes and contributing factors; and

(3) develop effective safety improvement policies and programs.

(b) DESIGN.—The study shall be designed to yield information that will help the Department and the States identify activities and other measures likely to lead to significant reductions in the frequency, severity, and rate per mile traveled of crashes involving commercial motor vehicles, including vehicles described in section 31132(1)(B) of title 49, United States Code. As practicable, the study shall rank such activities and measures by the reductions each would likely achieve, if implemented.

(c) CONSULTATION.—In designing and conducting the study, the Secretary shall consult with persons with expertise on—

(1) crash causation and prevention;

(2) commercial motor vehicles, drivers, and carriers, including passenger carriers;

(3) highways and noncommercial motor vehicles and drivers;

(4) Federal and State highway and motor carrier safety programs;

(5) research methods and statistical analysis; and

(6) other relevant topics.

(d) PUBLIC COMMENT.—The Secretary shall make available for public comment information about the objectives, methodology, implementation, findings, and other aspects of the study.

(e) REPORTS.—

(1) IN GENERAL.—The Secretary shall promptly transmit to Congress the results of the study, together with any legislative recommendations.

(2) REVIEW AND UPDATE.—The Secretary shall review the study at least once every 5 years and update the study and report as necessary.

(f) FUNDING.—Of the amounts made available for each of fiscal years 2001, 2002, and 2003 under section 4003(i) of the Transportation Equity Act for the 21st Century (112 Stat. 395–398), as added by section 103(b)(1) of this Act, $5,000,000 per fiscal year shall be available only to carry out this section.

### SEC. 225. DATA COLLECTION AND ANALYSIS.

49 USC 31100 note.

(a) IN GENERAL.—In cooperation with the States, the Secretary shall carry out a program to improve the collection and analysis of data on crashes, including crash causation, involving commercial motor vehicles.

(b) PROGRAM ADMINISTRATION.—The Secretary shall administer the program through the National Highway Traffic Safety Administration in cooperation with the Federal Motor Carrier Safety Administration. The National Highway Traffic Safety Administration shall—

(1) enter into agreements with the States to collect data and report the data by electronic means to a central data repository; and

Contracts.

(2) train State employees and motor carrier safety enforcement officials to assure the quality and uniformity of the data.

(c) USE OF DATA.—The National Highway Traffic Safety Administration shall—

(1) integrate the data, including driver citation and conviction information; and

(2) make the data base available electronically to the Federal Motor Carrier Safety Administration, the States, motor carriers, and other interested parties for problem identification, program evaluation, planning, and other safety-related activities.

(d) REPORT.—Not later than 3 years after the date on which the improved data program begins, the Secretary shall transmit a report to Congress on the program, together with any recommendations the Secretary finds appropriate.

Deadline.

(e) FUNDING.—Of the amounts deducted under section 104(a)(1)(B) of title 23, United States Code, for each of fiscal years 2001, 2002, and 2003 $5,000,000 per fiscal year shall be available only to carry out this section.

(f) ADDITIONAL FUNDING FOR INFORMATION SYSTEMS.—

(1) IN GENERAL.—Of the amounts made available for each of fiscal years 2001, 2002, and 2003 under section 4003(i) of the Transportation Equity Act for the 21st Century (112 Stat. 395–398), as added by section 103(b)(1) of this Act, $5,000,000 per fiscal year shall be available only to carry out section 31106 of title 49, United States Code.

(2) AMOUNTS AS ADDITIONAL.—The amounts made available by paragraph (1) shall be in addition to amounts made available under section 31107 of title 49, United States Code.

### SEC. 226. DRUG TEST RESULTS STUDY.

49 USC 31306 note.

(a) IN GENERAL.—The Secretary shall conduct a study of the feasibility and merits of—

(1) requiring medical review officers or employers to report all verified positive controlled substances test results on any driver subject to controlled substances testing under part 382

of title 49, Code of Federal Regulations, including the identity of each person tested and each controlled substance found, to the State that issued the driver's commercial driver's license; and

(2) requiring all prospective employers, before hiring any driver, to query the State that issued the driver's commercial driver's license on whether the State has on record any verified positive controlled substances test on such driver.

(b) STUDY FACTORS.—In carrying out the study under this section, the Secretary shall assess—

(1) methods for safeguarding the confidentiality of verified positive controlled substances test results;

(2) the costs, benefits, and safety impacts of requiring States to maintain records of verified positive controlled substances test results; and

(3) whether a process should be established to allow drivers—

(A) to correct errors in their records; and

(B) to expunge information from their records after a reasonable period of time.

Deadline.

(c) REPORT.—Not later than 2 years after the date of the enactment of this Act, the Secretary shall submit to Congress a report on the study carried out under this section, together with such recommendations as the Secretary determines appropriate.

### SEC. 227. APPROVAL OF AGREEMENTS.

(a) REVIEW.—Section 13703(c) of title 49, United States Code, is amended—

(1) by redesignating paragraphs (1) through (4) as subparagraphs (A) through (D), respectively;

(2) by striking "The Board" and inserting the following:
"(1) IN GENERAL.—The Board";

(3) by adding at the end the following:
"(2) PERIODIC REVIEW OF APPROVALS.—Subject to this section, in the 5-year period beginning on the date of the enactment of this paragraph and in each 5-year period thereafter, the Board shall initiate a proceeding to review any agreement approved pursuant to this section. Any such agreement shall be continued unless the Board determines otherwise."; and

(4) by moving the remainder of the text of paragraph (1) (as designated by paragraph (2) of this subsection), including subparagraphs (A) through (D) (as designated by paragraph (1) of this subsection), 2 ems to the right.

(b) LIMITATION.—Section 13703(d) of such title is amended to read as follows:

"(d) LIMITATION.—The Board shall not take any action that would permit the establishment of nationwide collective ratemaking authority.".

(c) EXISTING AGREEMENTS.—Section 13703(e) of such title is amended—

(1) by striking "Agreements" and inserting the following:
"(1) AGREEMENTS EXISTING AS OF DECEMBER 31, 1995.—Agreements";

(2) by adding at the end the following:
"(2) CASES PENDING AS OF DATE OF THE ENACTMENT.—Nothing in section 227 (other than subsection (b)) of the Motor

Carrier Safety Improvement Act of 1999, including the amendments made by such section, shall be construed to affect any case brought under this section that is pending before the Board as of the date of the enactment of this paragraph"; and

(3) by aligning the left margin of paragraph (1) (as designated by paragraph (1) of this subsection) with paragraph (2) (as added by paragraph (2) of this subsection).

**SEC. 228. DOT AUTHORITY.**          5 USC app.

(a) IN GENERAL.—The statutory authority of the Inspector General of the Department of Transportation includes authority to conduct, pursuant to Federal criminal statutes, investigations of allegations that a person or entity has engaged in fraudulent or other criminal activity relating to the programs and operations of the Department or its operating administrations.

(b) REGULATED ENTITIES.—The authority to conduct investigations referred to in subsection (a) extends to any person or entity subject to the laws and regulations of the Department or its operating administrations, whether or not they are recipients of funds from the Department or its operating administrations.

Approved December 9, 1999.

LEGISLATIVE HISTORY—H.R. 3419:

CONGRESSIONAL RECORD, Vol. 145 (1999):
    Nov. 18, considered and passed House.
    Nov. 19, considered and passed Senate.